MAX GOLDBERG, Landlord, *v.* ADOLPH FRIEDMAN, Tenant.

Municipal Court of the City of New York, Borough of Queens, March 5, 1946.

984

*Shapiro & Schlissel* for landlord.

*Lawrence D. Brody* for tenant.

PETTE, J.   In his petition filed to recover possession of the demised business space occupied by the tenant the landlord avers that he is the (1) owner thereof; (2) that the tenant's term has expired; (3) that he has the minimum equity of 25% of the purchase price, and (4) that he seeks in good faith to recover possession for his immediate and personal use.

As a defense the tenant pleaded chapter 314 of the Laws of 1945, known as the Business Rent Law.

Trial has been had at length upon the issues of law and fact.

By subdivision (d) of section 8 of said Law, it is provided that a landlord, acting in good faith, if he has an equity in the property of not less than 25% of the purchase price, and possesses an interest of not less than 50% in the business which he proposes to carry on in the space, may recover possession of business space on the expiration of the term of a tenant. This provision constitutes one of the seven classes of cases wherein an eviction is permissible even though the tenant continues to pay the emergency rent.

Upon the trial, the testimony submitted to the court in behalf of landlord established the following: That while the contract of sale for the demised premises was made by the former owner with Max Goldberg personally, record title was taken in the name of Magold Realty Corporation, and this corporation executed the $135,000 purchase-money bond and mortgage; that the balance of the purchase price was paid with the personal check of Max Goldberg; but no money passed at the time of the second conveyance; that the sale price of the original conveyance to Magold Realty Corporation was in the sum of $175,000 — $40,000 cash, $135,000 by way of mortgage. There was also testimony of additional cash payments in the sum of $21,000 made by Max Goldberg since his acquisition of title; this testimony as to the consideration on direct examination was reaffirmed upon cross-examination. Testimony was also offered from a representative of the Prudence Bond Corporation, to corroborate the petitioner's proof.

This proof raises the primary and novel question of law under the provisions of chapter 314 of the Laws of 1945, to wit: Has Max Goldberg, the petitioner, the required " equity in the property of not less than twenty-five per centum of the *purchase price* " or $175,000 (§ 8, subd. [d]) and has Max Goldberg established the fact that he paid 25% of the stated purchase price when, as a matter of record, the original grantee was Magold Realty Corporation, which subsequently reconveyed title to Max Goldberg for only a nominal purchase price?

The term " conveyance ", as used in section 240 of the Real Property Law, includes every instrument in writing, except a will, by which any estate or interest in real property is created, *transferred, assigned or surrendered.* Every instrument creating, transferring, assigning or surrendering an estate or interest in real property must be construed according to the intent of the parties, *as far as such intent can be gathered from the whole instrument, and is consistent with the rules of law.*

In the instant situation, Max Goldberg transferred his interest in the contract of sale and title was conveyed to Magold Realty Corporation, alleged to be his dummy corporation. Nevertheless said conveyance to the corporate grantee was clear and unambiguous on its face; it constituted a complete transfer of legal title to the property; and said corporate grantee by virtue of the deed acquired the vested incidents of ownership inherent in said legal ownership of the fee. To read into said deed that the corporate grantee was not in fact the legal owner and allow oral testimony to that effect, would violate the parol evi-

dence rule of this State. To condone such procedure, in the absence of fraud, would seriously impede the system and practice of real property conveyances wherein the general public places so great reliance upon deeds recorded in the register's office.

The term " purchaser " as used in section 243 of the Real Property Law means one who derives the title from the grantor. The term has a technical but well-settled meaning. (*Strough* v. *Wilder,* 119 N. Y. 530.) The vesting of the new ownership took effect upon the delivery of the deed to the Magold Realty Corporation. The subsequent execution of another deed from said corporation to Max Goldberg, the petitioner, constituted, in law, a *new* conveyance and vesting of ownership of the fee. (Real Property Law, § 244.) While in order to make a deed effective there must be both a delivery and acceptance with the intention that the instrument shall become operative as a conveyance, the recording of the deed may justify a presumption to that effect. (*Ten Eyck* v. *Whitbeck,* 156 N. Y. 341.) The grant of real property by the former owner to the Magold Realty Corporation passed the absolute title and all of the interest of the grantor to the corporate grantee; and a similar result followed upon the subsequent conveyance from the corporate grantee to the petitioner herein. (Real Property Law, § 245; *Neponsit Holding Corporation* v. *Ansorge,* 215 App. Div. 371.)

The petitioner stresses the " momentarily " vesting of title in the Magold Realty Corporation, the alleged dummy. However, there appears to be no foundation in the Real Property Law or in the authorities to sustain such contention. The undisputed fact remains, as attested by the petitioner's own testimony, that a deed was actually executed and delivered to the corporate grantee, and duly recorded. The duration of the vesting of the title in said corporate grantee is immaterial. The petitioner can not collaterally attack the legal efficacy of the deed into the Magold Realty Corporation at this time, when prior thereto he intended such conveyance to have full recognition, if only for a short time. If fire had occurred to the conveyed property at that particular time, the insurance would have been payable only to the fee owner, to wit, the corporate grantee; likewise, if an accident had occurred on the premises, the owner of record would have been the proper party defendant, since as of that particular time the individual, Max Goldberg, would not have appeared in the chain of title.

It has been generally stated that a contract for the sale of real estate is merged in the deed. (*Witbeck* v. *Waine,* 16 N. Y. 532; *Murdock* v. *Gilchrist,* 52 N. Y. 242; *Disbrow* v. *Harris,* 122 N. Y. 362; *Schoonmaker* v. *Hoyt,* 148 N. Y. 425; *Lambert* v. *Krum,* 121 Misc. 170; *Siebros Finance Corporation* v. *Kirman,* 232 App. Div. 375; *Desz* v. *Lincoln Savings Bank of Brooklyn,* 174 Misc. 263.) In the instant case, whatever rights Max Goldberg might have had under the original contract of sale merged in the execution and delivery of the deed to Magold Realty Corporation, which corporation had the sole privilege of enforcing all proprietary rights thereunder, subsequent to the conveyance.

In considering the effect of the subsequent transfer of title by the corporation to Max Goldberg this court must be guided by the wording of subdivision (d) of section 8 of chapter 314 of the Laws of 1945. At the time the corporation took title, a consideration of $40,000 plus a purchase-money mortgage of $135,000 was paid, but when Max Goldberg acquired title from the corporation the consideration was only the nominal sum of $1 subject to the existing mortgage of $135,000.

This evidence on the part of petitioner is obviously insufficient compliance with the statutory prerequisite of a 25% equity in the "*purchase price*". It is immaterial that the petitioner may have owned the entire stock of the Magold Realty Corporation, the original grantee, for the reason that, in the absence of fraud, the corporation must be regarded as having an independent existence and as a distinct entity. (*Tishman Realty & Constr. Co.* v. *Wolf,* 185 Misc. 317; *Straus-Duparquet, Inc.,* v. *Moglen,* 185 Misc. 831.)

In addition to other requirements set forth in the statute, the petitioner has the burden of establishing his equity in the demised premises of not less than 25% of the *purchase price* (*Hamblen, Inc.,* v. *Technical Precision Corp.,* 269 App. Div. 1029). Here the consideration paid by Max Goldberg to the Magold Realty Corporation for his deed was stated at $1 subject to said mortgage of $135,000. In view of the foregoing, it becomes unnecessary to give consideration to the other aspects of this proceeding.

The explicit provisions of subdivision (d) of section 8 of chapter 314 of the Laws of 1945, leave no alternative except to dismiss the petition for insufficiency, as a matter of law.